NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| HELENA ANDREYKO Individually and as Administratrix of the Estate of PAULINA ANDREYKO Deceased,<br><br>        Plaintiff,<br><br>v.<br><br>SUNRISE SENIOR LIVING, INC. (a Virginia Corporation); SUNRISE ASSISTED LIVING MANAGEMENT, INC. (A Virginia Corporation); SUNRISE OF EDGEWATER, LLC (A New Jersey Limited Liability Company); JOHN DOES 1-10, (Being the persons and/or entities responsible for the injuries suffered by plaintiff)<br><br>        Defendants. | Civ. No. 12-7240 (KM)<br><br>**O P I N I O N** |

*Appearances by:*

Gregg D. Trautmann, Esq.
Trautman & Associates, LLC
262 East Main Street
Rockaway, NJ 07866

 *Attorney for Plaintiff,*

Rafael Vergara
White and Williams LLP
One Penn Plaza
250 W. 34th Street, Suite 4110
New York, NY 110119

 *Attorney for Defendants.*

**DEBEVOISE, Senior District Judge**

This case arises out of the alleged beating, mistreatment, and/or neglect suffered by a patient-resident in an assisted living facility in New Jersey. Presently before the Court is a motion to dismiss the parent-corporation as a party to the action and two counts of the complaint. The instant motion arises out of a complaint filed by Plaintiff Helena Andreyko (hereinafter "Plaintiff" or "Helena") individually and as administratrix of the estate of her late mother Paulina Andreyko (hereinafter "Paulina"). Plaintiff alleges breach of contract (count one) and violations of the Nursing Home Responsibilities and Rights of Residents Act, N.J.S.A. 30:13-1 et seq. (count two), against Defendants Sunrise Senior Living, Inc. ("SSLI"), Sunrise Senior Living Management, Inc. ("Sunrise Management") (formerly known as Sunrise Assisted Living Management), Sunrise of Edgewater LLC,[1] and John Does 1-10 (collectively referred to as "Defendants"). Sunrise Management manages and operates the Sunrise of Edgewater assisted living facility at issue, and is a wholly owned subsidiary of SSLI. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Paulina required assistance in her activities of daily living as a result of dementia. She resided at the Sunrise of Edgewater assisted living facility in Edgewater, New Jersey from about March 2005 until her death on June 25, 2010 at the age of 94. Helena and Paulina entered into a

---

[1] Sunrise of Edgewater LLC is not a legal entity or existing company within the State of New Jersey. Plaintiff submits that Sunrise of Edgewater is a d/b/a/ of "Sunrise Third (Pool I) LLC." Indeed, the latter entity is a licensed to operate Sunrise of Edgewater, located at 351 River Road, Edgewater, NJ. (See Defs.' Mot. to Dismiss, Decl. Germaine Dignan, Ex. A., ECF 9-4.) Plaintiff notes that she will accordingly seek to amend the complaint to add Sunrise Third (Pool I) LLC as a party. Indeed, Sunrise Third Edgewater SL, LCC, is the owner of the assisted living community in question, and acts through its manager, Sunrise Management.

Resident Agreement which enrolled Paulina in the "Assisted Living Plus Program." Paulina was to receive assistance including but not limited to physical assistance with bathing or showering, physical assistance with dressing and orientation, physical assistance with eating, and physical assistance with walking. Additionally, she was to receive three "restaurant-style" meals a day. The cost of her residence averaged approximately $5,100 per month.

The crux of this complaint is based on allegations that in 2009, Paulina was beaten, mistreated, and/or neglected by the Sunrise staff.[2] On or about January 31, 2009, Helena received a call advising that her mother had allegedly suffered a fall and had a "little bruising over her eye." (See Compl., Ex. A, photograph.) The initial injuries sustained occurred during the evening hours. When Helena went to see her mother, she was shocked at the condition of her mother's face. Purportedly Sunrise did not transport Paulina to the hospital to attend her injuries because she received hospice care. Although Helena requested copies of any reports generated concerning the injuries, she was not provided any such reports.

The following day, Helena again went to visit her mother, and observed additional bruising which was not present the previous day. (See Compl., Ex. B., photograph.) These subsequent injuries also occurred during the evening hours. Helena thereafter arranged for her mother to be brought to the hospital so that her wounds could be treated, and hired private aids to provide for her mother overnight at the facility.

Paulina suffered from dementia and was unable to describe how her face and head had been bruised. Sunrise attempted to explain away the bruising by claiming that Paulina had

---

[2] Additionally, Plaintiff notes that Paulina's personal belongings were constantly stolen from her during her residence. After repeated complaints by Helena, Paulina was reimbursed by Sunrise for items wrongfully taken.

fallen. Helena submits that in order for Paulina to sustain the multitude of bruising, she must have fallen numerous times. However, Helena was never informed that her mother had fallen numerous times.

The Complaint asserts that regardless of whether Paulina was the victim of abuse and neglect or whether Sunrise failed to provide the staffing levels necessary to ensure it met its contractual obligations, Sunrise is liable for the injuries Paulina suffered while a resident there. First, Plaintiff argues that the Defendants are jointly and severally liable for breach of contract pursuant to the written Resident Agreement to provide basic and "Assisted Living Plus" care, and request compensatory damages, cost of suit, attorney fees, and equitable relief. Second, Plaintiff argues that the Defendants violated the New Jersey Nursing Home Resident Rights statute by failing to provide Paulina with a safe and decent living environment that recognizes her dignity and individuality. Plaintiff thus requests compensatory and punitive damages, cost of suit, attorney fees, and such relief which the court deems proper. Plaintiff has also demanded trial by jury.

On November 21, 2012, Defendants SSLI and Sunrise Management petitioned for removal from the Superior Court of New Jersey, Morris County. On December 19, 2012, Defendants filed a motion to dismiss both the breach of contract claim (count one) and the statutory violation claim (count two). First, Defendants contend that the applicable statute of limitations for a personal injury action should be applied, and thus Plaintiffs' breach of contract claim is properly considered as a tort which has a shorter statute of limitations that has expired. Second, Defendants argue that that the Nursing Home Responsibilities and Rights of Residents Act is inapplicable. Third, Defendants submit that SSLI is not liable for any possible negligence because a corporate parent is not liable for the actions of its subsidiary and because Plaintiff has

4

not plead sufficient facts to indicate SSLI's involvement. Fourth, Defendants argue that Plaintiff should not be granted leave to amend her complaint to cure any deficiencies.

## I. DISCUSSION

### A. Standard of Review

A motion to dismiss is reviewed pursuant to Federal Rule of Civil Procedure 12(b) (6), which provides for dismissal of a claim for failure to state a claim upon which relief can be granted. When considering a Rule 12(b) (6) motion, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court's inquiry, however, "is not whether the plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b) (6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." In contrast, Twombly held that "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." 550 U.S. at 545, 570. The plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby

justifying the advancement of "the case beyond the pleadings to the next stage of litigation."). This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (internal citations omitted).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Coll. Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).

Typically, when a court does rely on matters outside of the pleadings, it must convert the motion to dismiss into a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and provide all parties with a reasonable opportunity to present all material pertinent to the motion. See Fed. R. Civ. P. 12(d). This rule allows the plaintiff an opportunity to respond to any extraneous documents that the court considers. Pension Benefit, 998 F.2d at 1196. An exception to the general rule exists, however, so that a court may consider extraneous documents to which a plaintiff refers in the complaint or on which the claims in the complaint were based without converting the motion to dismiss into one for summary judgment. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit, 998 F.2d at 1196. The rationale behind the exception is that, when a complaint refers to or relies on

the document, "the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence in greatly diminished." Pension Benefit, 998 F.2d at 1196-97.

   B. Analysis

      1. Statute of Limitations

Plaintiff urges the Court to find that the statute of limitations has not tolled by constructing the action as a breach of contract. However, Plaintiff cites no supportive case law for this proposition, nor has she attempted to distinguish the cases upon which Defendants rely.

> [T]o yield to the plaintiffs' contention, namely, that the longer period of limitation applies, 'would be to permit a plaintiff to sue in tort within two years, or to frame his action in contract upon the same facts and thus gain four years.' Such would not be a reasonable construction of the third section of our statute (R.S. 2:24-2 N.J.S.A.) [governing actions for injuries to person by wrongful act], for therein the legislature made no distinction whatsoever between torts and contracts. It deals with injuries to persons resulting from the wrongful act, neglect, or default of another. Whether framed in tort or in contract what gives rise to the action? Unskillful treatment. And so, whether the duty arises through law, the common law, or whether the duty arises out of a contractual relationship, is immaterial so far as the limitation of the action is concerned.

Martucci v. Koppers Co., 58 F. Supp. 707, 708 (D.N.J. 1945) (quoting Weinstein v. Blanchard, 109 N.J.L. 332 (E& A1932)).

In Martucci, the plaintiff suffered complication arising from the unskilled treatment of his hand which as a result became infected and later amputated. The Court declined to accept that a longer statute of limitations applied pursuant to a breach of contract claim, and found that "the essence of the action is for injuries to the person, whatever may be the form of the action, and as such is barred by the two year statute of limitations." Id. at 709.

According to N.J.S.A. 2A:14-2, "[e]very action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of such action shall have accrued[.]" Similarly, survivorship actions for wrongful death must commence within two years after the death of the decedent, except in the case of conviction for murder, aggravated manslaughter or manslaughter. See N.J.S.A. 2A:31-3.

Here, Helena suffered injuries on or around January 31, 2009 and died on June 25, 2012. This action commenced on August 21, 2012. Even if the Court were to apply the statute of limitations from the date of death, the applicable statute of limitations expired approximately two months prior to the filing of this action. "[T]he statute of limitations under N. J. Stat. Ann § 2A:14-2 applies to actions for personal injuries, regardless of whether they arise out of tort or breach of contract." Rothman v. Silber, 83 N.J. Super. 192, 197 (Law Div. 1964) (citing Burns v. Bethlehem Steel Co., 20 N.J. 37 (1956), Tackling v. Chrysler Corp., 77 N.J. Super. 12 (*Law Div.* 1962).). See also Oroz v. American President Lines, Ltd., 259 F.2d 636, 639 (2d. Cir. 1958).

Here, the essence of the action is for personal injury, whatever may be the form of the injury. Thus, the statute of limitations has expired and count one must be dismissed.

**2. The Nursing Home Responsibilities and Rights of Residents Act**

The New Jersey "Nursing Home Responsibilities and Rights of Residents" Act, N.J.S.A. 30:13-1 *et seq.* (hereinafter the "NHRRA"), became effective in 1976 in an effort "to ameliorate the harsh conditions of the elderly in nursing homes[.]" In re Conroy, 98 N.J. 321, 377 (1985). In 1977, the Legislature established additional protections for the elderly through the creation of the Office of the Ombudsman for the Institutionalized Elderly. See N.J.S.A. 52:27G-1. This

statute was amended in 1983 to create further safeguards because "elderly patients in certain institutions or care facilities have been subjected to either physical or mental abuses [that have] either gone unreported or came to light many months later when it was too late to take official action." In re Conroy, 98 N.J. 321, 379 (1985). See also Estate of Anna Ruszala, ex rel. Mizerak v. Brookdale Living Communities, Inc., 415 N.J. Super. 272 (App. Div. 2010).

The NRHRRA establishes a cause of action for any person or resident whose rights are violated against any person committing such violation. A prevailing plaintiff is entitled to recover reasonable attorney's fees, costs, and treble damages. See N.J.S.A. 30:13-8.

Pursuant to the NRHRRA, the rights of nursing home residents include:

> j. [ ] [T]he right to a safe and decent living environment and considerate and respectful care that recognizes the dignity and individuality of the resident, including the right to expect and receive appropriate assessment, management and treatment of pain as an integral component of that person's care consistent with sound nursing and medical practices.
>
> . . .
>
> m. [The right] [n]ot to be deprived of any constitutional, civil or legal right solely by reason of admission to a nursing home.
>
> N.J.S.A. 30:13-5 (j), (m).

"Nursing home" is defined therein as:

> [A]ny institution, whether operated for profit or not, which maintains and operates facilities for extended medical and nursing treatment or care for two or more nonrelated individuals who are suffering from acute or chronic illness or injury, or are crippled, convalescent or infirm and are in need of such treatment or care on a continuing bases. Infirm is construed to mean that an individual is in need of assistance in bathing, dressing or some type of supervision.
>
> N.J.S.A. 30:13-2(c).

Defendants summarily argue in their moving brief that they are not subject to the NRHRRA because Sunrise is an assisted living home and not a nursing home. (Defs.' MTD Br. at 7-8.) Plaintiff counters that the NHRRA applies equally to assisted living residents.

The parties debate over the relevance of Estate of Anna Ruszala, ex rel. Mizerak v. Brookdale Living Communities, Inc., 415 N.J. Super. 272 (App. Div. 2010). In Ruszala, two joined plaintiffs brought suit for negligence, wrongful death, and violations of the NHRRA as a result of significant injuries suffered at their respective assisted living facilities. The court considered whether the parties could proceed with the action or whether they were subject to arbitration clauses in their resident agreements. The court examined a 2003 amendment of the NHRRA, found in N.J.S.A. 30:14-8.1,[3] which voids clauses that waive or limit a patient's right to sue for negligence or malpractice in this context. The court concluded that although the Federal Arbitration Act, 9 U.S.C.A. § 2, preempts the statutory amendment to some degree, provisions of the arbitration clauses at issue were nonetheless void and unenforceable under the doctrine of substantive unconscionability. Id. at 293 – 299. The court reasoned that in passing the NHRRA, "the Legislature recognized the need to protect a discrete class of citizens who, by

---

[3]   N.J.S.A. 30:13-8.1 provides:

> Any provision or clause waiving or limiting the right to sue for negligence or malpractice in any admission agreement or contract between a patient and a nursing home or assisted living facility licensed by the Department of Health and Senior Services pursuant to the provisions of P.L. 1971, c. 136 (C. 26:2H-1 *et seq.*), whether executed prior to, on or after the effective date of this act, is hereby declared to be void as against public policy and wholly unenforceable, and shall not constitute a defense in any action, suit or proceeding.

virtue of their age and infirmity, are particularly vulnerable to sharp commercial practices, especially in the area of health care, housing, and end-of-life decisions." Id. at 296.

Here, Defendants argue that Ruszala is instructive in that the statutory provision scrutinized therein, N.J.S.A. 30:13-8.1, *supra* n. 4, expressly refers to *both* nursing homes and assisted living facilities. Thus, Defendants contend that "the inclusion of assisted living facilities only in N.J.S.A. 30:13-8.1 of the Nursing Home Act means assisted living facilities are excluded from the other provisions of the Nursing Home Act which make no mention of assisted living facilities, but do mention nursing homes." (Defs.' Reply Br. at 7.) However, Defendants overlook that the underlying claims in Ruszala include NHRRA violations in the assisted living context. The court did not differentiate the NHRRA violations related to the injuries and wrongful death from the residents' arbitration clauses made void by the 2003 amendment to the NHRRA. Compare Ruszala, 415 N.J. Super. at 286 and id. at 292-93.

More importantly, the definition of "nursing home" under the NHRRA is broadly defined, and does not provide any limitations on its application to assisted living facilities. The statute covers "any institution . . . which maintains and operates facilities for extended medical and nursing treatment or care for two or more nonrelated individuals who are suffering from acute or chronic illness or injury, or are crippled, convalescent or infirm and are in need of such treatment or care on a continuing bases. Infirm is construed to mean that an individual is in need of assistance in bathing, dressing or some type of supervision." N.J.S.A. 30:13-2(c). Indeed, the definition includes patients who are in need of "*assistance* in bathing, dressing, or some type of supervision." Id. (emphasis added.) Defendants' argument would lead to absurd results by allowing assisted living institutions to avoid liability for violations suffered by their residents, contrary to the original purpose of the act to protect treatment of the elderly. There is simply no

11

indication in the NHRRA that the Legislature intended to narrow its reach to such a degree. Indeed, the Legislature knew to expressly limit the reach of the NHRRA, as it did in the case of institutions operated by certain religious denominations which rely on spiritual means through prayer alone for healing rather than standard medical care or treatment. See N.J.S.A. 30:13-9.

Moreover, regulations promulgated by the Commissioner of Health pursuant to the NHRRA set forth licensure standards for assisted living residence, comprehensive personal care homes, or assisted living programs. See N.J.S.A. 30:13-10; N.J.A.C. 8:36-1.1 to – 23. Accordingly, Chapter 36 of the New Jersey Administrative Code establishes resident rights, including the right to be treated with respect courtesy and dignity; the right to be free from physical and mental abuse and/or neglect; and the right to retain and exercise all the Constitutional, civil and legal rights to which the resident is entitled by law. N.J.A.C. 8:36-4.1(4), (16), (39). Chapter 36 further mandates that written resident care policies and procedures be established, implemented and reviewed, and that financial arrangements be established in part under requirements of the NHRRA. See N.J.A.C. 8:36-6.1, 6.2.

The motion to dismiss Plaintiffs' NHRRA claim is therefore denied because the NHRRA applies to assisted living facilities and a factual question remains as to whether violations pursuant to N.J.S.A. 30:13-5 (j) and (m), supra, took place.

3. **SSLI**

It is undisputed that Sunrise Management is the manager and operator of the Sunrise of Edgewater facility. Defendants move to dismiss SSLI because it is a parent corporation and not liable for the acts of its subsidiary Sunrise Management. Additionally, Defendants move to dismiss on the basis that the complaint does not allege any specific factual allegations against SSLI. In turn, Plaintiff argues that the contention is premature and properly considered pursuant

to a subsequent motion for summary judgment, rather than the instant motion to dismiss. Should the Court consider Defendants' application, Plaintiff seeks permission to supplement the opposition to include facts beyond the pleadings, or that dismissal be granted without prejudice.

The basis of Plaintiff's claim against SSLI is monthly billing statements which she received on behalf of both "Sunrise Senior Living" and "Sunrise of Edgewater." (ECF Doc. 6-2 at p. 6.) Plaintiff references zero case law in support of her contention that the corporate veil should be pierced because the billing statements illustrate SSLI's involvement in the day to day operations of the Sunrise of Edgewater facility. Nor does Plaintiff so much as attempt to distinguish cases relied on by Defendants in the moving brief. Defendants reply that the appearance of a logo or brand on an invoice is "insufficient as a basis to disregard the corporate form and pierce the corporate veil." (Def.'s Reply Br. at 9.)

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation is not liable for the acts of its subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61 (1998). This is a rule of general application unless there is a reason to pierce the corporate veil. "The Third Circuit has advised that 'a rule which imposes liability on a corporation which never exercised its general authority over its subsidiary . . . may unduly penalize the corporation for a decision by that corporation to benefit from one of the well-recognized and salutary purposes of the corporate form: specialization of management.'" Green v. William Mason & Co., 996 F. Supp. 394, 398 (D.N.J. 1998).

SSLI is incorporated in the state of Delaware, which has long held that "[a]bsent a showing of a fraud or that a subsidiary is in fact the mere alter ego of the parent, a common central management alone is not a proper basis for disregarding separate corporate existence . . .

13

." Skouras v. Admiralty Enterprises, Inc., 386 A.2d 674, 681 (Del. Ch. 1978). "Close relationships, even to the point where the subsidiary's management is run by the parent's employees, are not sufficient to hold the parent liable for the subsidiary's actions unless the 'subsidiary is in fact a mere instrumentality or alter ego of its parent." Curlett v. Madison Indus. Servs. Team, Ltd., 863 F. Supp. 2d 357, 363 (D. Del. 2012) (internal reference omitted). Similarly, in New Jersey, the corporate form may be disregarded if there is a justification to pierce the corporate veil, such as in a showing of fraud or injustice. Verni v. Harry M. Stevens, Inc., 903 A.2d 475, 498 (App. Div. 2006) (relying on Lyon v. Barrett, 89 N.J.294, 300 (1982); Portfolio Fin. Serv. Co. v. Sharemax.com Inc., 334 F. Supp. 2d 620, 626 (D.N.J. 2004)).

In order to warrant piercing the corporate veil of a parent corporation, Plaintiff must establish two elements: 1) that the subsidiary was dominated by the parent corporation, and 2) that adherence to the fiction of separate corporate existence would perpetrate a fraud or injustice, or otherwise circumvent the law. See State Dept. of Environmental Protection v. Ventron Corp., 94 N.J. 473, 500-01 (1983). In determining whether the first element has been satisfied, courts consider whether "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent." Id. at 501. A finding of corporate dominance is a fact-specific inquiry which includes consideration of "whether the subsidiary was grossly undercapitalized, the day-to-day involvement of the parent's directors, officers and personnel, and whether the subsidiary fails to observe corporate formalities, pays no dividends, is insolvent, lacks corporate records, or is merely a facade." Verni, 903 A.2d at 200 (citing Bd. Of Trs. v. Foodtown, Inc., 296 F.3d 164, 172 (3d Cir. 2002); Pearson v. Component Tech. Corp., 247 F.3d 471, 484-85 (2001); Marzano v. Computer Sci. Corp., 91 F.3d 497, 513 (3d Cir. 1996); Solomon

v. Klein, 770 F.2d 352, 353-54 (3d Cir. 1985); Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 610 (D.N.J. 2004)).

Here, the outstanding claim is for violations of the NHRRA, and specifically the right to a safe and decent living environment and considerate and respectful care that recognizes the dignity and individuality of the residence, and the right not to be deprived of any constitutional, civil, or legal right solely by reason of admission to a nursing home. N.J.S.A. 30:13-5(j), (m). The appearance of SSLI's logo on the billing statements does not suggest the parent corporation's involvement in the facility's day to day operations, involvement in the decency of Paulina Andreyko's living arrangements, or involvement in the violation of her constitutional, civil, or legal rights. Plaintiff has not asserted any plausible factual allegations that would impose liability upon SSLI for a violation of the NHRRA, nor has she asserted that Sunrise Management is an instrumentality or alter ego of SSLI. It is well established that mere ownership of a business does not establish the liability of a parent company for the actions of its subsidiary. Because there are no factual allegations against SSLI that would establish a plausible claim pursuant to the NHRRA, SSLI is dismissed from the action without prejudice.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. The motion to dismiss count one of the complaint is granted due to the running of the statute of limitations. The motion to dismiss count two of the complaint is denied because assisted living facilities are covered by the NHRRA. The motion to dismiss SSLI as a party to the action is granted without prejudice because Plaintiff has failed to establish sufficient factual allegations to pierce the corporate veil.

The Court will enter an order implementing this opinion.

**/s/ Dickinson R. Debevoise**
**DICKINSON R. DEBEVOISE, U.S.S.D.J.**

**Dated: October 24, 2013**