FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HELENA ANDREYKO Individually and as Administratrix of the Estate of PAULINA ANDREYKO Deceased,<br><br>                        Plaintiff,<br><br>v.<br><br>SUNRISE SENIOR LIVING, INC. (a Virginia Corporation); SUNRISE ASSISTED LIVING MANAGEMENT, INC. (A Virginia Corporation); SUNRISE OF EDGEWATER, LLC (A New Jersey Limited Liability Company); JOHN DOES 1-10, (Being the persons and/or entities responsible for the injuries suffered by plaintiff)<br><br>                        Defendants. | Civ. No. 12-7240 (KM)<br><br>**O P I N I O N** |

*Appearances by:*

Gregg D. Trautmann, Esq.
Trautman & Associates, LLC
262 East Main Street
Rockaway, NJ 07866

    *Attorney for Plaintiff,*

Rafael Vergara
White and Williams LLP
One Penn Plaza
250 W. 34th Street, Suite 4110
New York, NY 110119

    *Attorney for Defendants.*

**DEBEVOISE, Senior District Judge**

This case arises out of the alleged beating, mistreatment, and/or neglect suffered by a patient-resident in an assisted living facility in New Jersey. Presently before the Court is a motion for reconsideration of a previous decision which granted in part and denied in part a motion to dismiss. The instant motion arises out of a complaint filed by Plaintiff Helena Andreyko (hereinafter "Plaintiff" or "Helena") individually and as administratrix of the estate of her late mother Paulina Andreyko (hereinafter "Paulina") regarding treatment at an assisted living facility managed by Defendants Sunrise Senior Living, Inc. ("SSLI"), Sunrise Senior Living Management, Inc. ("Sunrise Management") (formerly known as Sunrise Assisted Living Management), Sunrise of Edgewater LLC,[1] and John Does 1-10 (collectively referred to as "Defendants"). Sunrise Management manages and operates the Sunrise of Edgewater assisted living facility at issue, and is a wholly owned subsidiary of SSLI. For the reasons set forth below, the motion is GRANTED.

## I.  BACKGROUND

The underlying facts are set forth in full by the Court in its October 24, 2013 opinion. (See Oct. 24, 2013 Op., ECF 23.) In essence, Paulina required assistance in her activities of daily living as a result of dementia. She resided at the Sunrise of Edgewater living facility from about March 2005 until her death on June 25, 2010 at the age of 94. The crux of the underlying Complaint is based on allegations that on or about January 31, 2009, Paulina was beaten,

---

[1] As previously noted by the Court, Sunrise of Edgewater LLC is not a legal entity or existing company within the State of New Jersey. Sunrise of Edgewater is a d/b/a/ of "Sunrise Third (Pool I) LLC," which is owner and licensed operator of the assisted living community in question, Sunrise of Edgewater, located at 351 River Road, Edgewater, NJ. Sunrise Third (Pool I) LLC acts through its manager, Sunrise Management. Plaintiff has yet to amend the complaint to add Sunrise Third (Pool I) LLC as a party.

2

mistreated, and/or neglected by the Sunrise staff. Her daughter Helena observed facial and head bruising for two consecutive days, and arranged for Paulina to be brought to a hospital so that her wounds could be treated. Due to Paulina's dementia, she was unable to describe how her face and head had been bruised. Thereafter, Helena hired private aids to care for Paulina overnight.

The Complaint asserts that regardless of whether Paulina was the victim of abuse and neglect or whether Sunrise failed to provide the staffing levels necessary to ensure it met its contractual obligations, Sunrise is liable for the injuries Paulina suffered while a resident there. First, Plaintiff argues that the Defendants are jointly and severally liable for breach of contract pursuant to the written Resident Agreement to provide basic and "Assisted Living Plus" care, and request compensatory damages, cost of suit, attorney fees, and equitable relief. Second, Plaintiff argues that the Defendants violated the New Jersey Nursing Home Responsibilities & Rights of Residents Act, N.J.S.A. § 30:13-1 et seq. (hereinafter "NHRRRA"), by failing to provide Paulina with a safe and decent living environment that recognizes her dignity and individuality. Plaintiff thus requests compensatory damages and punitive damages, cost of suit, attorney fees, and such relief which the court deems proper.

On November 21, 2012, Defendants SSLI and Sunrise Management petitioned for removal from the Superior Court of New Jersey, Morris County. On December 19, 2012, Defendants filed a motion to dismiss both the breach of contract claim (count one) and the statutory violation claim (count two). First, Defendants contended that the applicable statute of limitations for a personal injury action should apply, and thus Plaintiff's breach of contract claim is properly considered a tort which has a shorter statute of limitations that has expired. Second, Defendants argued that the NHRRRA is inapplicable. Third, Defendants submitted that SSLI is not liable for any possible negligence because a corporate parent is not liable for the actions of

its subsidiary and because Plaintiff has not plead sufficient facts to indicate SSLI's involvement. Fourth, Defendants argued that Plaintiff should not be granted leave to amend her complaint to cure any deficiencies.

On October 24, 2013, the Court granted in part and denied in part Defendants' motion to dismiss. (Oct. 24, 2013 Op., ECF 23.) The Court's reasoning is set forth in additional detail below. First, the Court granted the dismissal of count one for breach of contract because the essence of the action is for personal injury, and thus the statute of limitations expired. Second, the Court denied the dismissal of count two because the Court originally interpreted assisted living facilities as covered by the NHRRRA. Last, the Court granted without prejudice the dismissal of SSLI as a party to the action because Plaintiff failed to establish sufficient factual allegations to pierce the corporate veil.

On November 7, 2013 Defendants petitioned the Court for reconsideration. Defendants pressed for reconsideration on the basis that the Court overlooked two legal issues: (i) that the applicable two-year statute of limitations bars all claims in this case, including the now outstanding NHRRRA claim, and (ii) that assisted living facilities are not covered by the NHRRRA in the first place. In the event that the Court declines Defendants' request for reconsideration, Defendants request that the Court certify its ruling for interlocutory appellate review under 28 U.S.C. 1292(b) for guidance by the Third Circuit Court of Appeals on these issues.

## II. DISCUSSION

### A. STANDARD OF REVIEW

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i) and are considered "extremely limited procedural vehicle(s)." Resorts Int'l, Inc. v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992). As a result, "reconsideration is an extraordinary remedy, that is granted 'very sparingly[.]'" Brackett v. Ashcroft, Civ. No. 03-3988 (WJM), 2003 U.S. Dist. LEXIS 21312, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003) (quoting Interfaith Community Org. v. Honeywell Int'l, Inc., 215 F. Supp. 2d 482, 507 (D.N.J. 2002)).

Local Civil Rule 7.1(i) permits a party to seek reconsideration by the Court of matters which the party "believes the Judge or Magistrate Judge has overlooked" when it ruled on the motion. See L. Civ. R. 7.1(i). The movant has the burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter. See Compaction Sys. Corp., 88 F. Supp.2d at 345; see also L. Civ. R. 7.1(i). "The word 'overlooked' is the operative term in the Rule." Bowers v. NCAA, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) (citation omitted).

Moreover, L. Civ. R. 7.1(i) does not allow parties to restate arguments which the court has already considered. See G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990). Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process. See e.g., Bowers, 130 F. Supp. 2d at 612 (citations omitted); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 162 (D.N.J. 1988); NL Indus., Inc. v.

Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions . . . may not be used to re- litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted).

### B. ANALYSIS

#### 1. The Statute of Limitations

The Court previously dismissed the breach of contract claim because the essence of the action is for personal injury. (See Oct. 24, 2013 Op., ECF 23.) After examining relevant case law, the Court looked to N.J.S.A. § 2:14-2, which provides:

> Every action at law *for an injury to the person caused by the wrongful act, neglect or default of any person* within this State shall be commenced within two years next after the cause of action shall have accrued.
>
> N.J.S.A. § 2:14-2 (emphasis added).

Additionally, the Court noted that pursuant to N.J.S.A. § 2A:31-3, survivorship actions for wrongful death must commence within two years after the death of the decedent, except in the case of certain exceptions which are not applicable here. (Op. at 8).

Here, Paulina suffered injuries on or around January 31, 2009 and died on June 25, 2010.[2] The Court concluded:

> This action commenced on August 21, 2012. Even if the Court were to apply the statute of limitations from the date of death, the applicable statute of limitations expired approximately two months prior to the filing of this action. "[T]he statute of limitations under

---

[2] Due to typographical error, the previous opinion erroneously attributed the injuries to Helena and the year of death as 2012. (Op. at 8.) The error is found in the Discussion section rather than the Background section, and is harmless as it does not affect the reasoning and outcome.

6

> N.J.Stat. Ann. § 2A14:-2 applies to actions for personal injuries, regardless of whether they arise out of tort or breach of contract." Rothman v. Silber, 83 N.J. Super. 192, 197 (Law Div. 1964) (citing Burns v. Bethlehem Steel Co., 20 N.J. 37 (1956), Tackling v. Chrysler Corp., 77 N.J. Super. 12 (*Law Div.* 1962).). See also Oroz v. American President Lines, Ltd., 259 F.2d 636, 639 (2d Cir. 1958).
> *Here, the essence of the action is for personal injury, whatever may be the form of the injury*. Thus, the statute of limitations has expired and count one must be dismissed.

(Op. at 8) (emphasis added).

The Court then went on to find that the NHRRRA applies to Sunrise, despite that it is an assisted living facility. (Op. at 8-12.) The bulk of the Court's reasoning focused on the construction and applicability of the statute, however, and did not address the relationship between the cause of action arising out of the NHRRRA and the separate finding that the two-year statute of limitations had expired on the personal injury claim pursuant to N.J.S.A. § 2:14-2. The Court thus grants reconsideration here because the prior decision overlooked a legal issue that may alter the disposition of the matter. See L. Civ. R. 7.1(i); Compaction Sys. Corp., 88 F. Supp.2d at 345.

Defendants request the Court to reconsider its implicit finding that the two-year statute of limitations does not bar the NHRRRA claim. Defendants submit:

> In deciding the motion, the Court overlooked the fact that even if the NHRRA were applicable, any claim pursuant to that law is still in the nature of personal injury and thus subject to the two-year statute of limitations. Every claim in this case is for alleged personal injuries and therefore subject to the two-year statute of limitations in *N.J.S.A.* 2A:14-2. The NHRRA does not contain a statute of limitations. When a statute does not contain its own limitations period, the statute of limitations period is the one that would be applied at common law to an action involving the same type of "injury." *See Montells v. Haynes*, 133 N.J. 282, 627 A.2d 654, 658-59 (1993) (discussing New Jersey law against discrimination). The injury claims asserted in this case and the nursing home rights protected are undoubtedly personal in nature.

7

> Therefore, Count Two of the complaint must be dismissed for the
> same reasons Count One was dismissed.
>
> (Mot. for Recons. Br. at 2-3.)

In turn, Plaintiff argues that the NHRRRA is subject to a six year statute of limitations. In support of her argument, Plaintiff contends that N.J.S.A. § 2:14-1 is operative rather than N.J.S.A. § 2:14-2, *supra* at 6.[3] N.J.S.A. § 2:14-1 provides as follows:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, *for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title*, or for recovery under a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, *shall be commenced within 6 years next after the cause of any such action shall have accrued.*
>
> This section shall not apply to any action for breach of any contract for sale governed by section 12A:2-275 of the New Jersey Statutes.
>
> N.J.S.A. 2A:14-1 (emphasis added).

Plaintiff argues that 2A:14-2 does not apply because she is not seeking any damages for injury to the person. (Opp. Br. at 5.) Plaintiff maintains that the fact section of her complaint support that the breach alleged is for "neglect and mistreatment" suffered by Paulina during her stay at Sunrise, and that it is those facts that support her claim that Defendants violated Sections (j) and (m) of the NHRRRA. (Opp. Br. at 5-6.)[4]

---

[3] The Court notes that Plaintiff makes no attempt to respond to or distinguish the only case on which Defendants rely on this point, Montells v. Haynes, 133 N.J. 282 (1993).

[4] The Court notes Plaintiff's typographical error regarding her reliance on Section (l) of the NHRRRA, as she is actually appealing to section (j), regarding "the right to safe and decent living environment and considerate and respectful care that recognizes the dignity and individuality of the resident . . . ." (Compare Opp. Br. at 4-5 and Opp. Br. at 6, misidentifying

8

The relevant sections of NHRRRA set forth the rights of nursing home[5] residents:

> j. [ ] [T]he right to a safe and decent living environment and considerate and respectful care that recognizes the dignity and individuality of the resident, including the right to expect and receive appropriate assessment, management and treatment of pain as an integral component of that person's care consistent with sound nursing and medical practices.
>
> . . .
>
> m. [The right] [n]ot to be deprived of any constitutional, civil or legal right solely by reason of admission to a nursing home.
>
> N.J.S.A. § §§ 30:13-5(j), (m).

The second count of the Complaint provides:

> 51. The SUNRISE defendants were negligent, grossly negligent, flagrant, reckless, willful and wanton in failing to provide PAULINA ANDREYKO her statutorily mandated nursing home resident's rights, PAULINA ANDREYKO was deprived of such rights by the failures outlined herein-above and suffered injuries and damages a proximate result thereof.
> 52. The SUNRISE defendants breached PAULINA ANDREYKO's statutorily mandated nursing home resident's rights by *failing to provide her with a safe and decent living environment that recognizes her dignity and individuality*.

---

N.J.S.A. § 30:13-5(j) as section (l)). The Court's prior opinion also construed the relevant sections to be (j) and (m). (See Op. at 4, 9.)

[5] As discussed further in the second part of this analysis, "nursing home" is defined broadly by the statute as:

> [A]ny institution, whether operated for profit or not, which maintains and operates facilities for extended medical and nursing treatment or care for two or more nonrelated individuals who are suffering from acute or chronic illness or injury, or are crippled, convalescent or infirm and are in need of such treatment or care on a continuing bases. Infirm is construed to mean that an individual is in need of assistance in bathing, dressing or some type of supervision.
>
> N.J.S.A. § 30:13-2(c).

9

> 53. As a result of the aforementioned violations, the Estate of
> PAULINA ANDREYKO, Deceased is entitled to recover actual
> and punitive damages.
>
> (Compl. ¶¶ 51-53) (emphasis added).

The Complaint does not specify which "constitutional, civil or legal right" pursuant to Section (m) is at issue.

In support of her opposition to the motion for reconsideration, Plaintiff contends:

> Nowhere in the second count of plaintiffs' complaint do they seek
> a recovery in tort. They seek no damages for injuries to the
> person. Rather, it is the plaintiffs' contention that the bad acts
> complained of which were committed by the defendants amount to
> a breach of the NHRRA and the plaintiffs are seeking the resultant
> damages.
>
> (Opp. Br. at 6.)

In sum, Plaintiff argues that her self-characterized claim for "neglect and mistreatment," (Opp. Br. at 5-6), is premised on the rights afforded via the NHRRRA and should therefore be subject to the six-year statute of limitations provided by N.J.S.A. § 2:14-1 "for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3." However, N.J.S.A. § 2A:14-2 explicitly provides for a two-year statute of limitations for wrongful acts, neglect, or default – which are exactly the harms Plaintiff alleges in her description of her claims as for "neglect and mistreatment." Her characterization of the resultant damages as arising from the NHRRRA rather than in personal injury is inapposite to the essence of the action which arises from bruising on or around January 2009. Again, the Court has already dismissed Plaintiff's breach of contract claim for similar reasons. Upon reconsideration, the Court finds that the two-year statute of limitations applies to the outstanding NHRRRA claim as well, and Defendants are therefore entitled to dismissal of the Second Count as a matter of law.

### 2. Whether assisted living facilities are liable under the NHRRRA.

On October 24, 2013, the Court found that Sunrise was liable under the NHRRRA and denied dismissal of count two. The Court first looked to the purpose and history of the NHRRRA to protect the elderly and to create safeguards because "elderly patients in certain institutions or care facilities have been subjected to either physical or mental abuses [that have] either gone unreported or came to light many months later when it was too late to take official action." In re Conroy, 98 N.J. 321, 379 (1985). (See Op. at 8-9).

Next, the Court noted the parties' debate over the relevance of a state appellate decision, Estate of Anna Ruszala, ex rel. Mizerak v. Brookdale Living Communities, Inc., 415 N.J. Super. 272 (App. Div. 2010). The Court explained:

> In Ruszala, two joined plaintiffs brought suit for negligence, wrongful death, and violations of the [NHRRRA] as a result of significant injuries suffered at their respective assisted living facilities. The court considered whether the parties could proceed with the action or whether they were subject to arbitration clauses in their resident agreements. The court examined a 2003 amendment of the [NHRRRA], found in N.J.S.A. 30:14-8.1, which voids clauses that waive or limit a patient's right to sue for negligence or malpractice in this context. The court concluded that although the Federal Arbitration Act, 9 U.S.C.A. § 2, preempts the statutory amendment to some degree, provisions of the arbitration clauses at issue were nonetheless void and unenforceable under the doctrine of substantive unconscionability. Id. at 293 – 299. The court reasoned that in passing the [NHRRRA], "the Legislature recognized the need to protect a discrete class of citizens who, by virtue of their age and infirmity, are particularly vulnerable to sharp commercial practices, especially in the area of health care, housing, and end-of-life decisions." Id. at 296.
>
> (Op. at 10-11) (footnote omitted).

The Court then examined the parties' arguments as to the pertinence of Ruszala:

> Here, Defendants argue that Ruszala is instructive in that the statutory provision scrutinized therein, N.J.S.A. 30:13-8.1, *supra* n. 4, expressly refers to *both* nursing homes and assisted living

> facilities. Thus, Defendants contend that "the inclusion of assisted living facilities only in N.J.S.A. 30:13-8.1 of the Nursing Home Act means assisted living facilities are excluded from the other provisions of the Nursing Home Act which make no mention of assisted living facilities, but do mention nursing homes." (Defs.' Reply Br. at 7.) However, Defendants overlook that the underlying claims in Ruszala include [NHRRRA] violations in the assisted living context. The court did not differentiate the [NHRRRA] violations related to the injuries and wrongful death from the residents' arbitration clauses made void by the 2003 amendment to the [NHRRRA]. Compare Ruszala, 415 N.J. Super. at 286 and id. at 292-93.

(Op. at 11.)

In reaching its prior conclusion that assisted living facilities were to be read within the NHRRRA, the Court predominantly relied on the breadth of the definition of "nursing home" under the NHRRRA:

> More importantly, the definition of "nursing home" under the [NHRRRA] is broadly defined, and does not provide any limitations on its application to assisted living facilities. The statute covers "any institution . . . which maintains and operates facilities for extended medical and nursing treatment or care for two or more nonrelated individuals who are suffering from acute or chronic illness or injury, or are crippled, convalescent or infirm and are in need of such treatment or care on a continuing bases. Infirm is construed to mean that an individual is in need of assistance in bathing, dressing or some type of supervision." N.J.S.A. 30:13-2(c). Indeed, the definition includes patients who are in need of "*assistance* in bathing, dressing, or some type of supervision." Id. (emphasis added.) Defendants' argument would lead to absurd results by allowing assisted living institutions to avoid liability for violations suffered by their residents, contrary to the original purpose of the act to protect treatment of the elderly. There is simply no indication in the [NHRRRA] that the Legislature intended to narrow its reach to such a degree. Indeed, the Legislature knew to expressly limit the reach of the [NHRRRA], as it did in the case of institutions operated by certain religious denominations which rely on spiritual means through prayer alone for healing rather than standard medical care or treatment. See N.J.S.A. 30:13-9.

(Op. 11-12.)

For further support, the Court looked to the regulations promulgated by the Commissioner of Health pursuant to N.J.S.A. § 30:13-10 (Rules and regulations) to effectuate the purpose of the NHRRRA. However, the Court erroneously read Chapter 36 of the New Jersey Administrative Code (Standards for Licensure of Assisted Living Residences, Comprehensive Personal Care Homes, and Assisted Living Programs) as being promulgated pursuant to the NHRRRA. Upon reconsideration, the licensing and regulations of health care facilities is authorized pursuant to Title 26 (Health and Vital Statistics), Chapter 2H (Health Care Facilities), which also treats the licensing schemes of assisted living and nursing home facilities separately. See N.J.S.A. 26:2H-5 (authorizing assisting living licensure standards set forth by N.J.A.C. 8:36); N.J.S.A. 26:2H-12.5 (authorizing licensure standards of long-term care facilities, also known as nursing home residences, set forth by N.J.A.C. 8:39).

Plaintiff relies on dicta in Ruszala that "[r]egulations promulgated under the [NHRRRA] create corresponding standards for assisted living residences, comprehensive personal care homes, or assisted living programs. *N.J.A.C. 8:36-1.1 to -23*." Ruszala, 415 N.J. Super. at 293. (See Opp. Br. at 11.) Ruszala provides no citation or reasoning to support this notion. Furthermore, the text of the standards regarding the licensure scheme of assisted living facilities are set forth in N.J.A.C. § 8:36, which expressly states that the chapter's authority rests in a different part of the New Jersey Code, "N.J.S.A. 26:2H-1 et seq., specifically 26:2H-12.5." N.J.A.C. § 8:36 (chapter authority). Moreover, the statement is made in dicta because Ruszala focuses on whether NHRRRA's ban on arbitration clauses is preempted by federal law which deems arbitration provisions valid and enforceable. Specifically, N.J.S.A. § 30:13-8.1 expressly provides that in *both* nursing homes and assisted living contexts, arbitration clauses which waive or limit the right to sue are void and unenforceable. Ruszala holds that federal law preempts the

13

statute's bar on arbitration, however that other limitations of suit were not preempted under basic tenets of contract law. Id. at 820 - 22.

Specifically, Ruszala examined the residency agreements at issue therein, and found that restrictions on discovery, limits on compensatory damages, and a prohibition of punitive damages, were void and unenforceable under the doctrine of substantive unconscionability. Ruszala used other sections of the NHRRRA, including N.J.S.A. § 30:13-5 (Rights of [nursing home] resident), to inform its analysis of the validity of N.J.S.A. § 30:13-8.1. The Court looked to the parties' bargaining positions and economic motivations:

> These consumers are, by definition, unable to continue to live in their homes due to ill health, advanced age, or both. Beyond this profile, the Legislature has identified these individuals as a uniquely vulnerable group of consumers, entitled to special protection against economic abuse,[10] personal privacy abuse,[11] the deprivation of their right to choose their own healthcare professionals,[12] and an array of other abuses that speak to the core of human dignity.[13] These statutory protections highlight the disparity in economic resources between these particular consumers and the owners and operators of these specific facilities. This imbalance of resources invariable creates a relative inferiority in bargaining position for such individuals.
>
> FOOTNOTES
>
> 10 See *N.J.S.A.* 30:13-4.1, setting strict guidelines for the investment and disposition of nursing home security deposits; *see also N.J.S.A.* 30:13-5(a), preserving the right of nursing home residents to manage their own financial affairs.
>
> 11 *N.J.S.A.* 30:13-5(b) – (f).
>
> 12 *N.J.S.A.* 30:13-5(g).
>
> 13 *N.J.S.A.* 30:13-5(h) – (n).
>
> Id. at 297.

In sum, Ruszala did not conclude that the NHRRRA provides for the rights of assisted living residents outside of the statutory limitation of arbitration clauses. Rather, Ruszala considered contractual waivers of limitations to sue, which are expressly statutorily prohibited in *both* nursing home and assisted living residential agreements, in light of the Legislature's concern for the vulnerability of a population which can no longer live at home due to infirmity and/or advanced age.

For the first time, Defendants bring the Court's attention to a 2011 law, N.J.S.A. § 26:2H-128, which according to Defendants, provides "conclusive proof" that the Legislature did not believe that the NHRRRA mandated such rights for assisted living residents. (Defs.' Br. at 9.) Plaintiff counter-argues that Defendants should not now be heard on a motion for reconsideration to raise a new legal issue previously available to them because defense had the ability to raise the issue of its applicability and bar to Plaintiff's claim but chose not to advance that argument in their original motion. (Opp. Br. at 10.) As to the substance, Plaintiff argues that the creation of additional rights to assisted living residents by N.J.S.A. § 26:2H-128 does not indicate that assisted living residents are not covered by the NHRRRA.

N.J.S.A. § 26:2H-128, is entitled "Rights of residents at an assisted living facility and a comprehensive personal care home; notice and posting of rights." This new law sets forth forty-two rights for assisted living residents, including the right to: personalized service and care; independence and individuality; treatment with respect, courtesy, consideration, and dignity; privacy; decisions regarding medical treatment and care; freedom from physical and mental abuse and neglect; reception of various visitors; and the retention and exercise of all constitutional, civil, and legal rights to which the resident is entitled by law. See N.J.S.A. § 26:2H-128(b) (1), (3), (4), (13), (14), (16), (30), (33), (39).

15

It is important to note that N.J.S.A. § 26:2H-128 does not establish a liability-creating scheme such as that found in NHRRRA which affords a cause of action against violators of rights defined therein and an entitlement to prevailing plaintiffs of recovery of reasonable attorney's fees and costs. See N.J.S.A. § 30:13-8(a). The new law does not reference NHRRRA, nor has NHRRRA been amended in light of the new law. Despite Defendants' contentions of the new law as "conclusive proof," it can either be construed as: (1) an expansion of the fourteen rights delineated by the NHRRRA, see N.J.S.A. 30:13-5; or (2) further indication of the Legislature's intent to keep separate the schemes related to the rights, standards, and regulations of nursing home and assisted living residents, with the exception of the express application regarding arbitration clauses, as discussed at length above.

The Court need not reach a conclusion on the relevance of N.J.S.A. § 26:2H-128, however, as it presents a new question of law upon a motion for reconsideration and a "second bit of the apple." Tischio, 16 F. Supp. 2d at 533.

Thus, the only support remaining for the argument of the assignment of liability within the NHRRRA to assisted living facilities is the Court's original reasoning regarding the breadth of the NHRRRA's definition of "nursing home," see *supra* at 12. Defendants urge the Court to reconsider and argue:

> The NHRRA specifically referred to assisted living facilities when it wanted to. This is plain by looking at the statute in its entirety. The term "nursing home" appears within the NHRRA in 14 statutes without any reference to assisted living facilities. *See N.J.S.A.* 30:13-1, -2, -3, -3.1, -3.2, -4, -4.1, -4.2, -5, -6, -7, -9, -10.1, and -13. The term "assisted living facilities" only appears one time in the entire NHRRA – in *N.J.S.A.* 30:13-8.1 – and it appears alongside a reference to nursing homes in both the title of the statute and in its text[.]

(Defs.' Br. at 5.)

16

Upon reconsideration, the Court finds Defendants' argument to be persuasive. "Under the established canons of statutory construction, where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." GE Solid State, Inc. v. Dir. Div. of Taxation, 132 NJ. 298, 308 (1993). The New Jersey Supreme Court recently reminded: "Words make a difference. In case after case, we note that it is the Court's responsibility to give force to the words the Legislature has chosen and not rewrite plainly written laws." Plan for Abolition of Council on Affordable Hous., 214 N.J. 444, 470 (2013). Plaintiff has not suggested other methods of statutory interpretation to read otherwise.

The Court does not reach this conclusion lightly. Arbitration clauses regarding the rights of assisted living residents have been read in light of those rights afforded to nursing home residents. Considering the vulnerability of this population, there is little reason to distinguish these groups by enabling only one with an enforcement mechanism to realize its rights. The parties have not submitted any legislative history to suggest an express intention to withhold the enforcement of such rights to assisted living residents. However, the Court is guided by the cannons of statutory construction. The NHRRRA expressly provides an enforcement mechanism only with regard to the rights defined therein, and such rights are expressly afforded to nursing home residents. Despite the NHRRRA's breadth of definition of nursing home, the statute's repeated use of the term, coupled with its singular provision for assisted living facilities with regard to limits on arbitration, suggests a distinction. The overall legislative scheme to treat these institutions separately in its licensing, standards, and regulations further supports this finding. Although it pains the Court to reach this conclusion, if the Legislature aims to establish a liability-creating scheme to enforce the rights of assisted living residents, it will need to do so expressly.

## III.  CONCLUSION

For the foregoing reasons, the motion for reconsideration is granted.  The Court finds good cause to dismiss count two of the Complaint because the statute of limitations has run on the NHRRRA claim.  Moreover, the Court finds that assisted living residents are not afforded a cause of action within the NHRRRA outside of the arbitration context.

The Court will enter an order implementing this opinion.

**/s/ Dickinson R. Debevoise**
**DICKINSON R. DEBEVOISE, U.S.S.D.J.**


**Dated: January 24, 2014**